PRESIDENT AND DIRECTORS OF MANHATTAN COMPANY AND JOSEPH F. POEY, EXECUTORS, ESTATE OF JACOB F. HAUBEIL, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 94412. Promulgated May 24, 1940.

*Frederick W. Ritter, Esq.,* for the petitioners.
*Frank M. Thompson, Jr., Esq., E. O. Hanson, Esq., James C. Maddox, Esq.,* and *E. M. Woolf, Esq.,* for the respondent.

## 1246

OPINION.

OPPER: The deficiency at bar was determined by respondent on the ground that petitioners' decedent, having elected during his lifetime to return gain upon the installment basis, was taxable in the year of his death upon the unreported installments by force of the provisions of section 44 (d), Revenue Act of 1934.[1] This is contested upon several grounds which may best be summarized by a quotation from petitioners' brief:

* * *, firstly, [A] that since the installment obligation, which is the subject of the dispute herein, was specifically devised, and since the income upon said installment obligation was not and will not be received by the petitioner, no tax, therefore, can be levied against it; secondly, [B] that since the transferee is a charitable institution, it is not subject to tax on the specific legacy, and, therefore, it was not required that a bond be filed, as provided for in section 44 (d) of the Internal Revenue Act of 1934; and, thirdly, [C] that, if a bond was required to be filed, the petitioner made an honest attempt and offered to comply immediately upon ascertaining the facts.

A.—The subject of the present dispute is, of course, not the current income flowing from the installment obligation. It is the gain upon the acquisition thereof, which, but for the provisions of section 44 (b),

---

[1] SECTION 44. INSTALLMENT BASIS.
\* \* \* \* \* \* \*
(d) GAIN OR LOSS UPON DISPOSITION OF INSTALLMENT OBLIGATIONS.—If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and (1) in the case of satisfaction at other than face value or a sale or exchange—the amount realized, or (2) in the case of a distribution, transmission, or disposition otherwise than by sale or exchange—the fair market value of the obligation at the time of such distribution, transmission, or disposition. Any gain or loss so resulting shall be considered as resulting from the sale or exchange of the property in respect of which the installment obligation was received. The basis of the obligation shall be the excess of the face value of the obligation over an amount equal to the income which would be returnable were the obligation satisfied in full. This subsection shall not apply to the transmission at death of installment obligations if there is filed with the Commissioner, at such time as he may by regulation prescribe, a bond in such amount and with such sureties as he may deem necessary, conditioned upon the return as income, by the person receiving any payment on such obligations, of the same proportion of such payment as would be returnable as income by the decedent if he had lived and had received such payment.

would have been taxable to the decedent in the year of such acquisition as a gain upon the property exchanged therefor. By section 44 (d), however, the postponement proceeding from 44 (b) terminates upon the transmission to another of the installment obligation and the postponed tax is thereupon accelerated. The result is that upon such transmission, whether by way of sale or bequest, a tax is imposed upon the original transferor, in spite, or perhaps because, of the fact that he is no longer in a position to realize upon any of the remaining installments. It is accordingly no obstacle to liability that "income upon said installment obligation" will "not be received by the petitioner." Current income on the installment obligation is not the subject of this dispute. That, along with future installments of principal, will presumably be received by the hospital as the specific legatee of the obligation. But the tax in controversy is not upon such payments, but upon capital gain realized by the decedent during his lifetime. *Moore* v. *United States* (Ct. Cls.), 10 Fed. Supp. 143; certiorari denied, 296 U. S. 583. Neither theoretically nor practically will this tax fall upon the hospital. Reference to legislative policy encouraging charitable bequests can, therefore, have no bearing.

Of course there is an exception to everything that has been said. That flows from the provisions of the same section that a bond may be filed assuring the return as income by the transferee of the installments which have as yet escaped taxation, and that thereupon the accelerating provisions shall become inoperative. That involves petitioners' second contention.

B.—The proposition that the provisions of section 44 (d) requiring the filing of a bond in order to exclude the unpaid installments from decedent's income was inapplicable where a charitable institution became the transferee, was advanced by the Government in *Archie R. Conner, Administrator*, 37 B. T. A. 890, as the justification for the respondent's failure there to receive and approve the proffered bond. This position was rejected by the Board and respondent's refusal was characterized as arbitrary and without foundation in the law. Whether or not the hospital, if it chose to return the installments as its income, in order to comply with the conditions of a bond if given, would have been required to pay a tax may be left open here as it was in the *Conner* case, where we said (p. 896): "Whether the legatees can escape a tax on the income returned is not a matter which we have to determine." The giving of the bond is not dependent upon any such speculation. If given, its effect is as described in section 44 (d), *Archie R. Conner, Administrator, supra*. The failure to give it must have the opposite effect, upon the reasoning of that case, and unless we are prepared to read out of the section something which is unmistakably there.

C.—We may pass the question whether an "honest attempt" to comply with the exception was in fact made. The excuse offered for failure to file a bond at the time required by respondent's regulations is that petitioner was then unaware of the installment character of the obligation, in spite of the ten-month interval between decedent's death and the date of filing the income tax return which constituted the event fixing the time for filing the bond. No explanation of the interval between that time and the abortive compliance five months later is attempted, although petitioners' testimony shows that they were informed of the requirements "a few days after you filed the return." The effort at compliance, when ultimately resorted to, consisted not of the tender of an adequate bond but of Treasury notes accompanied only by an affidavit. Petitioners were then aware of respondent's regulations, as evidenced by their Exhibit #4. These prescribe the form and penalty of the obligation to be submitted,[2] presumably in pursuance of the statutory requirement of "a bond in such amount" as the Commissioner may prescribe. No such instrument, no bond of any kind, was tendered. The Government securities could not, of course, replace the provisions of the bond itself; their function would merely be to eliminate the necessity of sureties thereon.[3]

The omission to proffer an adequate penal bond sufficient to bind the obligors with incontrovertible finality is, of course, no mere technicality. The tax obligation is, as we have said, primarily that of the decedent for the last taxable year of his life. If, in the meantime, the statute of limitations were to run upon that primary liability, only the force of the bond would enable respondent to collect the tax from the third person to whom the obligation was transferred, or from decedent's personal representatives upon the default of such person. It is reasonable to assume that this situation presents both justification and necessity for the statutory condition of a penal bond.

Such considerations may, however, be laid to one side, for not even an "honest attempt" which falls short of fulfillment will suffice. "To the argument for liberal construction in favor of the petitioners because section 44 (d) is a relief provision, it is enough to say that what the petitioners ask is not a construction of the statute but a complete disregard of it." *Mabelle M. Evarts*, 39 B. T. A. 861, 864. We consider this proceeding indistinguishable from the situation there, for although the legatee here is a charitable institution, the legatees there returned the income as their own and paid the tax thereon. Even if the hospital could avoid tax on the income returned by it, a question we have expressly reserved, there was as little addi-

---

[2] Regulations 86, art. 44–5.
[3] Revenue Act of 1926, sec. 1126 ; Regulations 86, art. 44–5, *supra*.

tional tax collectible in the *Evarts* case since the tax on the legatees there appears to have been paid in full.

Petitioners make no such contention as that "exact compliance with the regulations was impossible. The law does not require the impossible." *F. Harold Johnston, Executor,* 33 B. T. A. 551, 555. And cf. *Mabelle M. Evarts, supra.* Nor could they or do they contend that a bond properly prepared, executed, and assured was tendered to respondent and arbitrarily refused by him. *Archie R. Conner, Administrator, supra.*

All that appears is that for certain results to follow, the statute specifically requires the filing of a bond and that no such bond has ever been filed or tendered. This is the irreducible minimum of the condition prescribed by the statute. Failure to perform it is highly substantial and leaves the tax results where they were before, a liability of decedent for which petitioners are accountable.

*Decision will be entered for respondent.*